ALLEN H. HISEY, Respondent, v. EASTMINSTER PRESBYTERIAN CHURCH et al., Appellants.

Kansas City Court of Appeals, April 6, 1908.

1. **COVENANTS: Collateral: Running with Land.** Covenants relating to a subject-matter not *in esse* such as for the erection of buildings upon the premises demised are personal covenants and do not run with the land so as to bind the assignees unless they are expressly named therein.

2. ———: ———: ———. A covenant runs with the land when either the liability for its performance or right to enforce it passes to the assignee of the land itself; and the covenants in a deed set out relating to the kind of buildings to be erected and the manner of their location on the lots conveyed are held to be enforcible between the parties and their grantees with knowledge; and the defendants herein took their land encumbered with the covenant existing between the plaintiff and his grantor.

3. ———: ———: ———: **Equity.** In equity it is not always necessary that the covenants should run with the land, and it is held that the plaintiff had an equity in defendant's lot since defendants bought from the common grantor with knowledge of the covenants in plaintiff's deed.

4. ———: ———: ———: **Construction.** Plaintiff's deed among others contained a provision that it was understood that the covenants and restrictions imposed by the grantor in their deed may be varied by him as occasion may require. *Held*, while this permitted variations as to the details to suit varying circum-

stances or changed conditions, it could not be construed so as to annul the covenants or restrictions by permitting subsequent purchasers to erect any kind of buildings on them.

5. ——: ——: ——: ——: **Necessity: Church.** The evidence as to the necessity of a church in the community could not justify the erection of a house of worship on the ruins of another's rights, since private property cannot be taken or damaged for public use without just compensation.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

*Warner, Dean, McLeod & Timmonds* for appellant.

(1) Under the pleadings and evidence of this case, the court committed error in rendering judgment for the plaintiff. (2) The particular covenant pleaded and relied upon by the plaintiff, did not run with, or bind the defendants' land, or operate in any way to restrict them in their use of it. 5 Pomeroy on Equity Jurisprudence, sec. 272, note 10; Hall v. Wesster, 7 Mo. App. 56; Railroad v. Railroad, 41 Minn. 461, 43 N. W. 473; 2 Kerr on Real Property, sec. 1218; 3 Pomeroy on Equity Jurisprudence, sec. 295, note c; Railroad v. Railroad, 135 U. S. 576; Coughlin v. Barker, 46 Mo. App. 54, 64. (3) Any rights which the plaintiff might have had as against the defendants, under the particular covenant pleaded, have been completely cut off under the facts of this case. (4) The facts of this case are not such as to entitle the plaintiff to injunctive relief in any event. Schuster v. Myers, 148 Mo. 422; R. S. 1899, sec. 3649; High on Injunctions, sec. 28; Yantis v. Burdett, 3 Mo. 457; Butts v. Fox, 107 Mo. App. 370; High on Injunction, sec. 9; 16 Am. and Eng. Enc. of Law, 351; Kerr on Injunction, 531-533;

Tanner v. Wallbrunn, 77 Mo. App. 262; 16 Am. and
Eng. Enc. of Law, 353, 360, 363; Dickhaus v. Older-
heide, 22 Mo. App. 76; Barnard v. Gibson, 7 How.
(U. S.) 656; Trustees of Columbia College v. Thacher,
87 N. Y. 318; Greenhood on Public Policy, pp. 1, 2.
Such contracts are void as being against public policy.
Tarley v. Edwards, 18 Mo. App. 676; Com. v. Knee-
land, 20 Pick. (Mass.) 206; Lindenmuller v. The Peo-
ple, 33 Barb. (N. Y.) 548.

*Brown, Harding & Brown* for respondent.

(1)    The restrictions contained in the contract
of August 11th, and the deed and the contemporan-
eous contract imposed a servitude upon the remain-
ing lots in Abington Park for the benefit of respond-
ent's lot, and he is entitled to injunctive relief to pre-
vent a violation of his rights.    Coughlin v. Barker,
46 Mo. App. 79; Hall v. Wesster, 7 Mo. App. 56; St.
Louis v. Kennett, 101 Mo. App. 370; Sharp v. Chea-
them, 88 Mo. 503; Keating v. Korfhage, 88 Mo. 524;
Compton v. Tower, 158 Mo. 282; 5 Pomeroy's Equity
Jurisprudence, sec. 272, notes 9, 10, also cases cited;
5 Pomeroy's Equity Jurisprudence, sec. 278, notes 24,
25; 5 Pomeroy's Equity Jurisprudence, sec. 281, note
33; Stevens v. Realty Co., 173 Mo. 520; Tulk v. Mox-
hay, 15 Eng. Ruling Cases, 254.    (2)    Appellants
had both actual and constructive notice of the servi-
tude, and it is immaterial whether the covenant did or
did not run with the land.    Coughlin v. Barker, 46 Mo.
App. 54; Pomeroy on Equity Jurisprudence, sec. 272
and notes; sec. 278 and notes and sec. 1295; cases
cited under point 1.    (3)    The reservation in the deed
relied upon by respondent should be read in the light
of all of the terms of the deed, and in the light of the
contemporaneous contract in order to arrive at the
real intention of the parties.    If it cannot be made to
harmonize with other portions of the deed and the con-

tract, then it must be read out of the deed entirely. Bent v. Alexander, 15 Mo. App. 190; Davis v. Hendrix, 59 Mo. App. 449; Belch v. Miller, 32 Mo. App. 396; Parsons on Contract (5 Ed.), 494; Johnson v. Wood, 84 Mo. 509; Waples v. Jones, 62 Mo. 440; Brownlee v. Arnold, 60 Mo. 79; Noel v. Gaines, 68 Mo. 649. (4) The injury to respondent's home, while immeasurable, was considerable. But the extent of the injury is immaterial. He had a right to enforce the contract, even if moved by caprice. "A party may not make a solemn engagement, and then disregard it on the plea that no harm will result to the other party." St. Louis v. Kennett, 101 Mo. App. 389; Hall v. Wesster, 7 Mo. App. 61; Pomeroy on Equity Jurisprudence, sec. 281, note 33; Trustees of Columbia College v. Thacher, 87 N. Y. 318; High on Injunctions, sec. 9; Ives v. Edison, 50 L. R. A. 134; Johnston v. Hyde, 32 N. J. Eq. 446; Merritt v. Parker, 1 N. J. L. 400; Tillotson v. Smith, 38 N. H. 90; Hulme v. Shreve, 3 Gr. Ch. 116; Dewey v. Bellows, 9 N. H. 282; Dickason v. Canal, 15 Beav. 260; Parsons on Contracts, 213. (5) Appellants had notice of the restrictions. In the face of vigorous protests they expended a small amount of money in making an excavation for the church. They went into it with eyes open and in the face of respondent's contention. They will not be permitted to take advantage of their own wrong and be heard to say that inasmuch as they have gone to an expense, the court should take that fact into consideration.

BROADDUS, P. J.—This is an injunction suit to restrain the defendant from erecting a church building on a certain lot in Kansas City in what is known as the Abington Addition. The facts are that the Abington Land Company opened up an addition with the view of having it built up with residences. The plain-

tiff bought a lot in the addition and erected a residence thereon, upon the inducement that the land in the addition would be used for that purpose only. This contract of purchase was duly recorded on August 11, 1903. On the 28th day of that month the company made him a deed to the lot, which has the following recitations: "It is mutually agreed by and between the parties hereto as and for a part of the consideration heretofore mentioned, that the premises hereinbefore described are conveyed subject to the following covenants, conditions and restrictions which shall be binding upon the parties hereto, their heirs, successors and assigns, and which shall remain in force and effect for the full period of twenty years from the date of this deed to-wit:

"1st. Said premises shall be used by the party of the second part, or by his heirs or assigns, including tenants, for residence purposes only.

"2nd. No building shall be erected upon said lot with its front wall less than thirty feet from the nearest line of the street upon which said lots fronts.

"3rd. No residence with appurtenances thereto shall be erected upon said lot costing less than three thousand dollars.

"4th. Similar covenants and conditions and restrictions shall be contained in all conveyances of property in Abington Park now owned by the party of the first part. And in case the party of the first part improves or causes to be improved, any property in said Abington Park, such improvements and uses thereof shall be under and subject to similar covenants and conditions, it being understood that the covenants and restrictions referred to in this paragraph may be varied by said party of the first part as occasion may require.

"8th. Each and all of the covenants aforesaid shall, for said twenty years, run with and bind the lot or lots in said Abington Park, in respect of which the

same are made, and kept by each and all persons and parties owning, occupying or using the same during that time."

Subsequently defendant bought a lot in said addition through its trustees who were notified of all the conditions in plaintiff's deed with full notice of the avowed purpose orginally of the said land company that lots in the addition should be used exclusively for the purpose of residences and no other, and were proceeding to erect a church upon the same, in such a manner as to occupy almost the entire lot the front of which would be near the line of the sidewalk, when the restraining order was issued herein. The defendants' deed contains none of the conditions or restrictions mentioned in that of the plaintiff. The court rendered judgment for plaintiff restraining defendants from erecting its church on said lot from which they appealed.

We have instances where it is held that collateral covenants do not run with the land. [Des Moines and Fort Dodge Railroad Co. v. Wabash Railroad Co., 135 U. S. 576.] That was: "Where a contract for a traffic arrangement made between two railroad companies, declares that the contract and any damages for the breach of the same shall be a continuing lien upon the roads of the contracting parties, this does not constitute a lien running with the land, when by due course of law it has passed into other hands, although it may be valid contract personally enforceable between the parties." The contract in that instance had reference to traffic between the two companies, and not in reference to realty, the covenants providing for a lien on the roads for the damages arising out of a breach of the contract was therefore what is called collateral covenants. "All covenants relating to a subject matter not *in esse* such as for the erection of buildings upon the premises demised, are personal covenants and

do not run with the land so as to bind the assignees unless they are expressly named therein.    [2 Kerr on Real Property, sec. 1218.]    The foregoing authorities state the rule and we do not deem it necessary to cite others.

But it is not a question of law that presents the difficulty in this case but its application.    We are not impressed with the conviction that the covenants of warranty in this instance are collateral.    The covenants in plaintiff's deed by their very terms are made mutual as to him and to his  grantor,  the  land  company.    One of these covenants is that the premises conveyed shall be used by him for residence purpose only; and the land company covenants also that similar covenants, shall be inserted in all conveyances of property in said addition owned by the company.  "A covenant runs with the land when either the liability for its performance or the right to enforce it passes to the assignee of the land itself."    [2 Kerr on Real Property, sec. 1218.]    And the author in the same section says: "In order that it may run with the land, its performance or non-performance must affect the nature, quality or value of the property demised independent of collateral circumstances, or it must affect the mode of enjoyment, and there must be a privity between the contracting parties."    There can be no question but what under the covenant mentioned, that as the property should be used for resident purposes only, the plaintiff would have the right to restrain the land company should it attempt to violate its terms by erecting a building other than a residence on any of its unsold lots.  This right affects the value of the property conveyed to him; and it is a right attached to the land itself and it does not depend upon any collateral circumstances.    The defendants bought their lot, we might say encumbered with the covenant to the plaintiff which created a privity between them.

In Coughlin v. Barker, 46 Mo. App. 54, Judge THOMPSON who delivered the opinion of the court states the law as follows: "We fully concede the general rule which is invoked in behalf of plaintiff, that rule is, that where the common grantor of two adjoining lots sells one and retains the other, and puts in the deed of the one which he sells a covenant against building in a certain way, which covenant is manifestly intended for the benefit of the lot which is retained, and he afterwards sells this lot to another, the covenant passes to the assign of such lot as an appurtenance to it, or as an easement for the benefit of it, and such assign may enforce it against the owner of the other lot, whether he acquired the other lot immediately from the original vendor or through mesne conveyances or by devise, descent or otherwise from him; provided he took with notice of it, actual or constructive." Many decisions both English and American are quoted to sustain the opinion. The decision states that such restriction is generally construed to have been intended by the parties for the benefit of the land retained by the grantor. But this case goes much farther as the restrictions are manifestly made for the benefit of the grantee also. Besides the conveyance expressly provides that the covenants mentioned shall run with the land.

If we are wrong in the foregoing conclusion the judgment of the court can be upheld on another ground. In the opinion of Judge THOMPSON we find the following on page 62: "Nor is it at all material to the right of a plaintiff to have such a restriction enforced in equity, that it should be a covenant running with the land. . . . The question, whether, the covenant runs with the land, seems to be material only on the question of notice; if the covenant runs with the land then it binds the owner of the land, whether he had knowledge of it or not; for he takes no greater title

than his predecessor had to convey. But if the covenant does not run with the land, but the land is subject to what is some times called an equity and other times a negative easement in favor of adjoining land, then in order to enforce this easement against the land, it is essential that the owner should have taken the land with notice of it." That plaintiff had such equity in the defendants' lot there can be no question. He bought his lot with the understanding, which was incorporated in his deed, that the residue of the land unsold should be charged alike with the equity imposed by its terms upon his own, of which defendants in their answer admit full knowledge.

The defendants however insist that the land company had the right under covenant 8 in the subsequent sale of its lots to vary the covenants and restrictions in said deed. The language is: "it being understood that the covenants and restrictions referred to in this paragraph may be varied by said party of the first part as occasion may require." The language used must be construed with the reference to the intention of the parties to be derived from the circumstances and the nature of the covenants and restrictions in the deed. We can easily see that in the progress of time and the varying circumstances that might occur that it would be to the interest, at least not to the detriment, of the owners of property in the addition that changes might well be made to suit the changed conditions. For instance the price of labor and building material used in the constructions of residences might cheapen to so great an extent that a much better building could be erected for less than three thousand dollars, than one erected for that sum at the date of the deed. Under such a condition a variation in the cost of residence building would be justifiable under the language quoted. Many instances might be given to the same purpose. But we do not understand that the language used could rea-

sonably be construed so as to annul the covenant or restriction by permitting purchasers of lots to erect any kind of buildings on them.

It is true that defendants introduced evidence tending to show that there was a necessity for a church in that particular locality, and that other lots had been sold to purchasers without any of said covenants and restrictions inserted in their deeds of conveyances. But there was no evidence that such purchasers had erected or contemplated erecting other than residence on the same excepting the defendant. Surely it cannot be said that there is no other land in the near vicinity of this addition that would not be as suitable and useful for church purposes as that the church selected. However that may be, speaking frankly for myself, I am of the opinion that there is nothing in the defendants' creed that would justify it in erecting its house of worship on the ruins of another's rights. To promote the public welfare the State authorizes the taking and damaging of private property, but this cannot be done under the constitution without just compensation. Here the rights of plaintiff, property rights, are sought to be taken or damaged without any compensation whatever under the plea of necessity.

The defendants' lot adjoins that of the plaintiff and the building which it proposed to erect would materially affect the value and desirability of his property as a residence. The judgment is affirmed. All concur.