Mr. and Mrs. Charles VARNAL, Appellants-Plaintiffs,

v.

KANSAS CITY, Missouri, a municipal corporation, and P. W. Halloran, Respondents-Defendants.

No. 25634.

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 11, 1972.

Application to Transfer Denied July 17, 1972.

1. Strauss v. J. C. Nichols Land Co., 327 Mo. 205, 37 S.W.2d 505. Cowherd Development Co. v. Littick, 361 Mo. 1001, 238 S.W.2d 346, 348.

Elwyn L. Cady, Jr., Independence, for appellants-plaintiffs.

Aaron A. Wilson, Jr., Acting City Counselor, Robert A. Dakopolos, Associate City Counselor, Thomas C. Clark, Asst. City Counselor, Kansas City, for respondents-defendants.

CROSS, Judge.

Summary judgment was rendered in favor of defendants Kansas City, Missouri and P. W. Halloran, on grounds this action was barred by a former judgment in a federal court and that the relief plaintiffs sought was not recoverable against defendants by reason of their immunity from liability in performing a governmental function. Plaintiffs appeal.

We state the history of the litigation chronologically.[1] On September 21, 1967, plaintiffs filed in the United States Court for the Western District of Missouri a petition against the defendants named herein, prefaced by an introductory paragraph stating, "This action arises under U.S.C. Title 42, Section 1983, as hereinafter more fully appears." Immediately following are allegations, as a theory of recovery, that "Defendants on or about September 2, 1965 began and conducted a campaign of illegal and unconstitutional harrassment of plaintiffs under color of local law, defendant Halloran being an employee of defendant City charged with the duty of inspections by the City." Specific averments of the acts complained of read:

"A. Plaintiff Mrs. Varnal was threatened with arrest;

B. Plaintiff Mr. Varnal was falsely arrested and imprisoned;

C. Plaintiffs home was subjected to unauthorized and unconsented entry and search without proper authorization and in violation of constitutional prohibitions against Search and Seizure and in violation of Due Process guarantees of the Missouri and United States constitutions."

The petition further pleaded that those acts interfered with plaintiffs' rights in the sanctity of their home, compelled them to expend substantial sums for counsel fees, litigation expenses and travel, and caused them to suffer mental anguish, humiliation and embarrassment. The petition prayed for actual and punitive damages against both defendants.

On the same day, September 21, 1967, plaintiffs filed an identical petition against defendants in the Circuit Court of Jackson County, Missouri, except for deletion of the allegation that the suit was brought under the Civil Rights Act and extremely minor variations of preliminary language of descriptive nature. Plaintiffs' allegations of their case theory and the specific tortious acts complained of are in language exactly as appear in the federal court petition; likewise, their allegations of resulting injury and their prayer for damages.

After so filing both actions, and at some undisclosed date, plaintiffs voluntarily dismissed the federal court action as to defendant Kansas City and proceeded to a jury trial against defendant Halloran, resulting in a verdict and judgment in favor of defendant Halloran. Thereafter, on February 11, 1969, defendants filed their motion for summary judgment in the state

---

1. The controversy arose following alleged enforcement of the city's housing code by defendant Halloran as the city's employee charged with the official duty of inspection appertaining thereto, and as an alleged governmental function in the interest of health, safety and welfare of the inhabitants. Plaintiffs date the beginning of their alleged "harrassment" by defendant as of September 23, 1963, apparently because on that day prosecution was instituted against plaintiffs in municipal court for allegedly refusing to provide running water for all plumbing facilities in premises under their control.

action pursuant to which the relief prayed was granted by the court as above stated.

As appellants, plaintiffs undertake to challenge the validity of both grounds upon which the trial court rendered summary judgment. They dispute (1) that this action is barred by the former judgment, and (2) that defendants are immune from liability because their acts complained of were performed as a governmental function.

■ Plaintiffs' first point in its entirety reads, "The court erred in sustaining the motion for summary judgment because the federal civil rights case and this case are separate causes with different standards and different parties." That language does not conform to requirements of Civil Rule 84.04(d), V.A.M.R., in order to constitute a valid appeal point and presents nothing properly for review, in that it fails to state concisely why it is contended the court was wrong in its ruling. Merely to say that the state and federal actions are "separate causes" because they are "different" as to "standards and parties" is mere conclusory assertion and conveys no reason whatsoever for this court to hold the trial court ruled incorrectly. Plaintiffs' "argument" following their first point presents no more of substance to differentiate the two causes than does the point itself. It is completely void of any fact or statement demonstrating that the two actions are "separate causes with different standards and different parties." Notwithstanding the insufficiency of both point and argument, we examine the question sought to be raised.

■ Submitted as supporting their proposition that the two actions are separate causes with different standards and parties, plaintiffs cite and rely on one case only, Whirl v. Kern, 5 Cir., 407 F.2d 781, which they say "points up the separateness of the Federal Civil Rights cause and that in state court." Plaintiffs misconceive the opinion's effect as it pertains to their contention. The case actually holds that "liti-gation should not be fissioned or atomized where both federal and state causes of action arise out of 'a common nucleus of operative fact.'" citing Mine Workers v. Gibbs, 1966, 383 U.S. 715, at 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228. After noting that Whirl's state action for false imprisonment and his federal civil rights case "no doubt" arose out of a common nucleus of operative fact and that the federal district court had already determined both the state and federal actions, the reviewing court held that procedure to have been the proper course of action by the district court. So ruling, the court stated: "Under such circumstances, unless it can be said that the federal claim involved was frivolous or clearly foreclosed by prior Supreme Court decisions, * * * 'the strong and practical policies undergirding the pendent jurisdiction doctrine require that * * * (the state cause of action) * * * be determined by a federal forum.' Connecticut General Life et al. v. Craton, et al., 5 Cir. 1968, 405 F.2d 41."

A Minnesota case, Campbell v. Glenwood Hills Hospitals, Inc., 273 Minn. 525, 142 N.W.2d 255, involves facts essentially identical with those of this case and is directly in point on the question of res judicata. In the cited case, a plaintiff commenced actions in both federal and state courts, against the same parties and founded on the same facts, claims and law. The federal court case was termed a "civil rights" action to redress deprivation of his liberty in violation of his constitutional rights. In his state action plaintiff alleged he was subjected to false imprisonment and technical assault and battery in violation of his constitutional rights. The federal case first came to hearing with the resultant ruling from the court that plaintiff had no cause of action arising from any violation of constitutional or civil rights, and the rendition of a final judgment dismissing plaintiff's action. Thereafter, upon consideration of plaintiff's state court action, the state court held it was barred by the federal court judgment, in language as follows: "It is clear that that decision, involving the

same parties, the same facts, the same claims, and the same law as the one before us, constitutes a final adjudication of plaintiff's Federal claims under the doctrine of res judicata. Plaintiff had his day in court and the decision was against him on the merits. He failed to appeal and thus is foreclosed from asserting claims based upon the Federal Constitution and statutes."

Before ruling finally whether the federal judgment is res judicata of this action, it is appropriate that we consider the suggestion advanced by plaintiffs that, "Under the leading Monroe v. Pape, 365 U.S. 167, [81 S.Ct. 473, 5 L.Ed.2d 492] there is no cause under the Civil Rights Act against a municipality so that the instant case, insofar as it proceeds against the City, involves no identity of parties (to invoke the rule of res judicata in the city's favor)." Assuming that the Civil Rights Act does not encompass municipalities as subject to "civil rights" suits in federal jurisdictions, nevertheless the city stands in such relationship with defendant Halloran that any immunity from further litigation afforded Halloran by operation of the doctrine of res judicata must be extended to include the defendant city, whose liability could arise only by reason of Halloran's act and application of the doctrine of respondeat superior.

■ As recognized in Missouri and as stated by this court in Butler v. Manley, 416 S.W.2d 680, the rule of res judicata is as follows: " 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief.' 30A Am.Jur., Judgments, Sec. 371, p. 411, quoted with approval in Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118, 122–123, McIntosh v. Foulke, 360 Mo. 481, 228 S.W.2d 757, 761 and Kansas City v. Martin, Mo.App., 391 S.W.2d 608, 614. See also: 17A Mo. Digest, Judgment, ■ ■

■ The foregoing quoted rule (and a wealth of case decisions) significantly mandates that a former judgment shall be a bar to the subsequent maintenance of an action involving the same "material facts or questions"—not only as against record parties to the former action, but also as against persons or entities *in privity with* parties to the action. As stated in Wors v. Tarlton, 234 Mo.App. 1173, 95 S.W.2d 1199 l.c. 1206: "It is a well-established principle of law that a judgment is conclusive and binding, not only upon the parties to the action or proceeding in which it was rendered, but also upon persons who are in privity with them in respect to the subject-matter of the litigation." That principle is particularly applicable with respect to governmental bodies, their officers and employees. "Generally a governmental body and its officers, boards, commissions, agents, and representatives form but a single entity with respect to application of the rule of res judicata, so that the governmental body may be bound by judgments obtained in actions in which its authorized representatives were parties * * * A judgment for or against a public officer, in an action brought by or against him in his official capacity, is conclusive on the municipal corporation which he represents, it being the real party in interest. * * *" 50 C.J.S. Judgments § 796, pp. 335, 337. Unquestionably, under the facts of this controversy, the city stands in privity with

## 580

defendant Halloran with respect to the subject litigation and consequently fully shares with him any right of immunity existing by reason of the former judgment.

Having determined the status of the city to be that of a party in privity with its co-defendant Halloran, we move to the ultimate determination of whether this state action is barred by the federal court judgment *as to both defendants*. As heretofore noted, the two causes as pleaded are identical. There has been no showing of any variance between them in any respect. Hence, the same "material facts or questions" were in issue in both cases as "a common nucleus of operative fact." Having been judicially determined by a court of plaintiffs' selection, those common issues may not be fissioned and relitigated in this action, either against defendant Halloran in whose favor the former judgment was rendered, or against his privy, the defendant city. Plaintiffs have had their day in court, with full opportunity to try their state action together with their federal suit as was done in the Whirl case with full approval of the federal court of appeals. The courts of Missouri are not open to litigants under circumstances existing in this controversy. The trial court correctly ruled that this action is barred by the former judgment.

Plaintiffs' brief contains a second point: "The court erred in granting summary judgment since the critical doctrine of governmental immunity is no longer consonant with modern Missouri jurisprudence." As argument, plaintiffs favor us with the information that Kansas, Nebraska and Arkansas have abolished governmental immunity, and suggest that an Arkansas opinion, Parish v. Pitts, 244 Ark. 1239, 429 S.W.2d 45 "reflects the correct modern position consonant with Missouri jurisprudence." We are not so much concerned with "reflections" by Arkansas courts as we are with controlling decisions rendered by Missouri courts. Our examination of Missouri authority convincingly

discloses that the rule of law exempting municipal corporations from liability for torts arising out of acts performed by their officers and employees in the exercise of a governmental function has not been extirpated from the body of Missouri jurisprudence. See the leading case, Fette v. City of St. Louis, Mo.Sup., 366 S.W.2d 446, and cases cited in 21A Mo. Digest, Municipal Corporations,

The judgment is affirmed.

SHANGLER, C. J., and DIXON, J., concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of court at the time the case was submitted.